CASE 25.—ACTION BY SARAH GEIS AGAINST THE SOUTH COVINGTON & CIN. STREET RY. CO.—October 27, 1909.

## South Cov. & Cin. St. Ry. Co. v. Geis

Appeal from Campbell Circuit Court.

J. W. YOUNGBLUT, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Carriers — Passengers — Injuries — Actions—Evidence.—In a street car passenger's action for injuries sustained while alighting, by the alleged sudden starting of the car, evidence held not to support a verdict for plaintiff.

2. Damages——Instructions—Personal Injuries.—Where the petition in a personal injury action alleged that plaintiff lost 20 weeks from her work because of the injuries, and was permanently injured, so that the only elements of damage were the time lost and permanent inpairment of earning power, the instructions as to the latter item of damages should have permitted recovery only for the "permanent" impairment of plaintiff's ability to earn money, so as to exclude recovery under that item for time lost.

L. J. CRAWFORD for appellant.

ARTHUR C. HALL for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-
MISSIONER—Reversing.

Appellee, Sarah Geis, instituted this action against
appellant, the South Covington & Cincinnati Street
Railway Company, to recover damages for personal
injuries. The jury returned a verdict in her favor in
the sum of $500. From the judgment based thereon,
this appeal is prosecuted.

It is earnestly insisted by appellant that the verdict
is flagrantly against the evidence. In view of this con-
tention, it will be necessary to set forth the evidence
in some detail.

The accident occurred on December 12, 1907. About
6 o'clock a. m. on that date appellee boarded one of
appellant's cars at Fifth avenue and Kenton street
in the city of Dayton, Ky., for the purpose of taking
passage thereon to the place of her employment
in Cincinnati, Ohio. It was her custom to take car No.
1 on the Belleview and Dayton line. On the occasion
in question she failed to catch that car, but boarded
car No. 7, which was the next car following No. 1, at
Fifth avenue and Benham street. The latter street is
the next street eastwardly from Kenton street, where
the cars of appellant stop to take on and let off pas-
sengers. When car 7, on which appellee was a pas-
senger, arrived at Fifth avenue and Benham street,
car No. 1, which it had been appellee's custom to ride
on, was standing at that point waiting for passengers
to get off or take passage. Car No. 7 moved up in
the rear of car No. 1. Before No. 7 had stopped, and
while it was moving slowly, appellee said to the con-
ductor, "Can I catch that car?" The conductor re-
plied: "Yes; I guess so, lady. He will wait for you."

Thereupon appellee started to the rear of the car for the purpose of getting off. From this point on there is a sharp conflict in the testimony.

Appellee testified that the car came to a full stop; that after the car stopped she stood on the platform for several minutes. She then attempted to alight from the platform, by placing one foot on the ground and the other on the step, and holding with one hand to the upright bar of the car. While she was in this position the car was caused to be suddenly started, thereby throwing her violently to the ground and injuring her. She was confined to her bed for about 5 weeks, and to her home about 20 weeks. She was earning $9 per week as a tailoress, and lost 20 weeks from her work. She expended for necessary services of physicians, nurses, and medicine the sum of $125. Up to the time of the trial, which was on March 23, 1909, she was still suffering from her injuries, and at that time required the services of a physician. The physician who treated her was of opinion that her injuries were permanent.

The testimony for appellant is as follows: The conductor on car No. 7 states that appellee boarded the car at Fifth avenue and Kenton street. When they reached the end of the line, there was another car there waiting for its time. The conductor started in the car to shake out the register. Appellee said: "Can I catch that car ahead?" The conductor replied: "Yes; I guess so, lady. He will wait for you." Appellee started out of the car. The conductor stopped about the middle of the car, looked back, and as he looked appellee stepped down and off the car before it came to a stop. At the time appellee spoke to the conductor the car in front was not over 20 feet away. Car No. 7 was moving slowly at the time

appellee got off, and did not move over 5 feet after appellee was injured. The ground at the place where appellee got off was rough and frozen. Martin Schroath, the motorman on car No. 7, testified that at the time appellee stepped off the car it was just coasting along; that he did nothing to cause the car to go suddenly forward. Herman J. Fischer, who was on the car just behind car No..7, but who was not then in the employ of the company,.testified that he saw appellee fall. The car was barely moving when she attempted to alight. It moved a foot or two after she got off. Appellee did not stand on the back end of the car at all, but got right off. Jerry Mahoney, conductor upon the car in front of car No. 7, testified that he saw appellee walk to the rear of car No. 7 and step off. At the time the car was simply coming to a standstill. The car went probably two feet after appellee alighted. Miss Rose Berkemeier, the only passenger on the car besides appellee, testified that she knew the latter. When appellee attempted to alight, the car was moving very slowly. Appellee never stood at all upon the rear platform, but walked right out and stepped off the car. As she moved out of the car she walked faster than an ordinary walk.

In the above testimony it will be seen that no one corroborates appellee, while there are five witnesses for appellant, one of whom was a disinterested stranger, one not then in the employ of the company, but a former employe, and three others who were employes of the company at the time they testified. Although there is a great disparity in the number of witnesses testifying for appellee and for appellant, we would not be disposed to disturb the finding of the jury, if there were any circumstances of the case which tended to support the evidence of appellee. Ac-

cording to her own story, she was anxious to catch car No. 1, which was immediately in front of car No. 7. With that end in view she started to the rear of car No. 7 for the purpose of alighting. Notwithstanding her anxiety and hurry to catch the preceding car, she nevertheless states that she stood on the platform for several minutes after the car came to a stop. Furthermore, not only she, but every other witness, testified that car No. 1 was but a short distance in advance of car No. 7. It is, therefore, altogether unlikely that car No. 7 was permitted to stop within a few feet of car No. 1, and was then suddenly started up towards that car which was standing still. Thus it will be seen that the circumstances surrounding the accident tend to support the statements of appellant's witnesses, rather than the statement of appellee, and, therefore, to make improbable the testimony given by the latter.

After a careful consideration of all the evidence and of all the circumstances, we are inclined to think that the finding of the jury is flagrantly against the evidence, and that the ends of justice require that this case be remanded for a new trial.

As the case must be reversed for the reason given, we deem it proper to say that the instruction on the measure of damages should be corrected so as to read "and such permanent impairment, if any, of her ability to earn money," instead of, "and such impairment, if any, of her ability to earn money," thereby excluding from the latter item any damages that might be allowed for loss of time. The petition charged that appellee had lost 20 weeks from her work, and that she was permanently injured. Therefore the only elements of damage, if any, were the

time lost and the permanent impairment of her power to earn money.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.